Plaintiffs ruptured disc for which she underwent surgery in August 1998 was not the result of the work-related injury by accident which she suffered two years earlier on August 24, 1996. It is well established that the plaintiff has the burden of proving that the injury complained of resulted from an incident arising out of and in the course and scope of the employment. Here, plaintiff has failed to carry this burden; therefore, I must respectfully dissent from the majority opinion.
On 24 August 1996, plaintiff took a package approximately three-quarters (3/4) full and weighing about six (6) pounds to the spinning frame, stepped on the step stool and placed the package on the top of the frame. Plaintiff then noticed her shoe was untied and she sat down on the step stool to tie her shoe. While plaintiff was bent over, the half empty package she had just placed on the top of the frame fell and struck plaintiff in the back of her head. This caused head-aches for two to three weeks for which plaintiff took over the counter medication. She did not require medical attention and, in fact, did not even see the plant nurse until December 16, 1996. Furthermore, plaintiff continued to perform her regular job and even requested and worked overtime.
The medical evidence of record demonstrates a lack of a causal relationship between the August 24, 1996 injury and the cervical disc injury that required surgery in August of 1998. In November 1996, a little over two months since the incident, plaintiff saw Dr. David C. Keller who diagnosed arthritis and prescribed an anti-inflammatory. Significantly, he noted no symptoms of a ruptured disc. On January 10, 1997, Dr. Keller noted neck and upper back strain but again no symptoms of a ruptured disc. As a primary care physician, Dr. Keller is quite capable of diagnosing symptoms of a ruptured disc including radiculopathy.
In July 1997, plaintiff struck the top of her head on a wall-mounted wooden telephone, which caused upper back pain and headaches that were localized at the top of her head. There were still no symptoms of radiculopathy or a ruptured disc. By August 13, 1997, these complaints had resolved. It was not until April 1998, seventeen months after the initial incident of August 24, 1996 that plaintiff began to demonstrate symptoms consistent with cervical disc problems. In fact this is the first time that plaintiff required narcotic pain medication and there was unmistakably an increase in plaintiffs pain as well as a significant difference in plaintiffs complaints and symptoms. This is clearly documented by the medical records and any finding to the contrary is not supported by the greater weight of the evidence.
Based on plaintiffs history and the medical evidence of record, neither Dr. Voytek nor Dr. Pool could state to a reasonable degree of medical certainty that plaintiffs cervical disc injury was caused by the work-related injury of August 24, 1996. Both could only speculate as to the actual cause. There are questions of the remoteness of the August 24, 1996 injury and the natural degeneration and spontaneous rupture of discs due to the normal aging process. Both physicians placed a great deal of confidence in a primary care physicians ability to diagnose a ruptured disc and to detect its symptoms.
Although plaintiff suffered an injury at work on August 24, 1996, the consequences of this injury were minor and resolved in a relatively short time. According to the greater weight of the evidence of record, plaintiffs herniated disc and the resulting surgery in August 1998 were not a result of the initial injury. Therefore, I must respectfully dissent and would reverse the holding of the Deputy Commissioner in this case.
 S/_______________ DIANNE C. SELLERS COMMISSIONER